# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

JUDY MASTER                          CIVIL ACTION NO. 07-1117

VERSUS                               JUDGE ELIZABETH ERNY FOOTE

LHC GROUP INC, ET AL.                MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court are four motions to dismiss filed by the Defendant, MJS and Associates, L.L.C. ("MJS").  See Record Documents 103, 104, 124 & 127.  The latter two motions [Record Documents 124 & 127] also include an alternative request for summary judgment.  Targeting the Plaintiff's claim for retaliation pursuant to Title 31, United States Code, Section 3730, otherwise known as the False Claims Act ("FCA"), MJS seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.  MJS's arguments for dismissal under 12(b)(1) and 12(b)(6) are seemingly intertwined, in that dismissal is urged for the reason that the FCA, particularly Section 3730(h), bars any civil actions brought more than three years after the date of retaliation and, further, does not provide a remedy for purported acts of retaliation that occur post-employment. The Plaintiff, Judy Master ("Master"), opposes all of the motions to dismiss.  See Record Documents 112, 135, & 137.  Based on the pertinent undisputed facts and the language of the statute itself,

MJS's first two motions to dismiss [Record Documents 103 & 104] shall be **GRANTED**, while its second two motions to dismiss, or alternatively, motions for summary judgment, [Record Documents 124 & 127] shall be **DENIED**.  In accordance with this ruling, Master's claims against Defendant MJS are **DISMISSED WITH PREJUDICE**.

## FACTUAL BACKGROUND

Defendant MJS is a healthcare consulting firm which was hired to perform a Medicare compliance audit of Defendant LHC Group, Inc. ("LHC").  In March of 2007, MJS hired Master as a nurse auditor on the LHC compliance audit.  In June of 2007, Master terminated her employment with MJS.  The following month, she filed the instant qui tam action against LHC, pursuant to the FCA.  The United States intervened and settled some of the claims against LHC regarding its violations of the FCA.[1]  Master received a multi-million dollar portion of the settlement on the claims in which the Government intervened.  The remaining claims in the suit are moving forward.

Particularly relevant to the instant ruling is that in 2011, Master's qui tam suit against LHC was unsealed, and MJS became aware of it.  In December of 2011, MJS filed suit against both Master and her husband in state court in Texas, alleging

---

[1] The Government declined to intervene in some of the other claims against LHC.

breach of contract and other state law claims.  The suit is primarily based on MJS's contention that Master violated her employment agreement with MJS, which prohibited her from disclosing or using any trade secrets or records obtained during the course of her employment.  Essentially, it is MJS's position that Master used confidential business information to pursue the qui tam action against LHC.

Master filed a second amended complaint in this Court in January of 2012, this time adding MJS as a defendant to the action.  See Record Document 74.  In so doing, Master alleged that MJS retaliated against her, both during her employment ("pre-termination"), as well as after she left the company ("post-termination" or "post-employment"), in violation of the FCA's anti-retaliation provision.[2]  Master's amended complaint also seeks a declaratory judgment proclaiming that MJS's state law claims relating to Master's duties of confidentiality to MJS are preempted by federal law.

At the same time as she filed the aforementioned amended complaint in this Court, Master removed MJS's Texas state suit to federal court in the Eastern District of Texas, asserting federal question jurisdiction.  Master's position was that MJS's state law claims against her would require resolution of substantial questions of

---

[2] The FCA prohibits the making of fraudulent claims for payment by the United States.  To help enforce this prohibition, the Act also creates a cause of action for anyone retaliated against by his employer for attempting to prevent a violation of the Act.

federal law- the FCA.  The district court disagreed and remanded the case to state court on April 2, 2012.  MJS subsequently filed the instant motions to dismiss Master's retaliation claims.

## LAW AND ANALYSIS

I.     Federal Rule of Civil Procedure 12(b)(1).

Motions filed pursuant to Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. "Lack of subject matter jurisdiction may be found in any one of three instances:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  See id.  In reviewing a Rule 12(b)(1) motion to dismiss, "the district court is empowered to consider matters of fact which may be in dispute." Id.  "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."  Id.

II.    Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."  Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).  While a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations must "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 29 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678, 129 S. Ct. at 1949.  In determining whether the plaintiff has stated a plausible claim, the court must construe the complaint in the light most favorable to the plaintiff, see In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 210 (5th Cir. 2010), and accept as true all of the well-pleaded factual allegations in the complaint.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007); In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2009).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678,129 S. Ct. at 1949 (internal citation omitted).  Thus, the

Court does not have to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  <u>Plotkin v. IP Axess Inc.</u>, 407 F.3d 690, 696 (5th Cir. 2005).  In determining whether a plaintiff has pleaded factual allegations to state a claim that is plausible, the Court may not evaluate the plaintiff's likelihood of success but must construe the complaint liberally.  <u>See</u> <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d at  205; <u>see</u> <u>also</u>, <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1965 (factual allegations, which taken as true, must be enough to raise a right to relief above the speculative level, even if doubtful in fact).

III.    <u>Analysis.</u>

As previously mentioned, MJS now seeks to dismiss Master's retaliation claims, instituted under § 3730(h) of the FCA.  Master's retaliation claims allegedly are based upon both pre-termination and post-termination conduct by MJS.  Pre-termination, Master claims she was improperly instructed to alter bills and was harassed and discriminated against when she complained and refused to participate in the fraud.  Post-termination, Master claims that by filing the state suit in Texas, MJS has retaliated against her for bringing the qui tam action against MJS's client, LHC.  MJS seeks dismissal of these claims or, alternatively summary judgment, contending that (1) res judicata and collateral estoppel preclude Master from asserting her retaliation claims in this court; (2) Master's pre-termination retaliation

claims are barred by the three year statute of limitations; and (3) the FCA provides no remedy for Master's post-termination retaliation claims.   Each of these contentions will be addressed in turn.

      A.     Res judicata and collateral estoppel.

The two most recent motions to dismiss filed by MJS, and the only motions which seek summary judgment, assert res judicata and collateral estoppel as a basis for dismissing Master's claims against MJS.  Specifically, MJS argues that Master's allegations of pre- and post-termination retaliation were litigated in the Eastern District of Texas.  When the district court ruled that it did not have subject matter jurisdiction to hear the case, MJS submits that it rejected Master's retaliation theory, and that Master is now precluded from relitigating the case she lost in the Eastern District of Texas.  Master responds that the federal court in Texas did not make any findings on her retaliation claims, but rather found that it lacked subject matter jurisdiction.  In other words, the court did not determine whether Master could successfully allege her retaliation claims against MJS.  This Court agrees that the Eastern District of Texas opinion did not make any conclusive findings as to Master's federal retaliation claims in this Court, but rather makes clear that the ultimate resolution of retaliation is left for another day.

However, what is more significant to this Court is the fact that MJS cannot rely on res judicata or collateral estoppel, per the order of Magistrate Judge Hornsby.  Indeed, on October 26, 2012, MJS untimely moved for leave to amend its answer to include the affirmative defenses of res judicata and collateral estoppel. See Record Document 123.  Magistrate Judge Hornsby denied MJS leave to amend its answer because the request was untimely.  See Record Document 140.  Judge Hornsby explained that the Texas suit was remanded to state court on April 2, 2012; the deadline for amendment of pleadings in this court was June 8, 2012; yet MJS did not move to amend its answer until October 26, 2012.  MJS failed to show good cause for its untimely request to amend its answer, and thus the request was denied. Because of that, MJS cannot now rely on res judicata and collateral estoppel as reasons to dismiss Master's complaint.  The Fifth Circuit has pronounced that these are affirmative defenses that must be affirmatively pled, or else waiver will result. See Russell v. SunAmerica Sec., Inc., 962 F.2d 1169, 1172 (5th Cir. 1992) ("Under Federal Rule of Civil Procedure 8(c), the doctrine [of res judicata] must be affirmatively pled.  Failure to so plead usually precludes the district court and appellate courts from considering the doctrine."); see also U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas, 944 F.3d 253, 258 (5th Cir. 1991) ("Federal Rule of Civil Procedure 8(c) requires that 'a party shall set forth affirmatively . . . estoppel . . . and

any other matter constituting an avoidance or affirmative defense,' . . . and failure to timely raise estoppel generally constitutes a waiver."). Thus, the Court holds that the defenses of res judicata and collateral estoppel have been waived by MJS's failure to timely raise them, and therefore they cannot form the basis of a dismissal or a summary judgment in this case.

      B.      Pre-termination retaliation.

MJS submits that Master's claims of harassment and retaliation while she was an employee at MJS must be dismissed for two reasons.  First, the claims were not brought within the FCA's three year statute of limitations.  Reliance on the statute of limitations is an affirmative defense on which the pleading party bears the burden of proof.  See F.T.C. v. Nat'l Bus. Consultants, Inc., 376 F.3d 317, 322 (5th Cir. 2004). Accordingly, the burden is on MJS to demonstrate that dismissal of Master's retaliation claim is appropriate.  Second, MJS asserts that Master cannot satisfy the elements for a retaliation cause of action under the FCA.  The Court will address the statute of limitations argument first.

On January 27, 2012, Master amended her federal complaint to add MJS as a defendant.  In this complaint, she asserts that MJS retaliated against her when she complained about MJS's instructions to alter audit records.  Specifically, the complaint alleges that MJS instructed Master to alter audit reports.  In response,

Master complained to MJS on two occasions, once at a meeting and then subsequently to a supervisor, explaining that it was inappropriate to alter the audit reports, as doing so would "create a false impression of the allowability of non-reimbursable costs."   Record Document 74, p. 47.   Master also requested documentation from a supervisor that would state that Master had been instructed to perform the audits in this manner.  "As a direct result of [her] complaints," Master contends that MJS "harassed and discriminated against [her] in the work place and imposed work conditions on [her] that adversely impacted her." Id. For instance, before she complained about the audit process, MJS allowed Master to choose which audits to perform.  After her complaints, MJS assigned Master with specific audits and no longer allowed her to choose which audits to perform. Master asserts that "as a result of the . . .  harassment and discrimination, and her refusal to participate in fraudulent activity, [Master] was forced to resign from her position with MJS in June 2007." Id. at p. 48.

MJS argues that because these claims were not brought until 2012, four and a half years after the alleged harassment and retaliation, they are subject to dismissal under the FCA.  Indeed, the FCA provides that a civil action brought under its retaliation provision "may not be brought more than 3 years after the date when the retaliation occurred." 31 U.S.C. § 3730(h)(3).  Master contends that her claim is not

barred by the three year statute of limitations, but rather is saved by either the Texas savings statute or Louisiana's prescriptive rules.  This Court does not agree.

First, the Texas savings statute,  Section 16.069 of the Texas Civil Practice and Remedies Code, provides that an individual who has a counterclaim or cross claim, which is otherwise time-barred, may file the claim within thirty days of the date his answer is due, so long as the claim arises out of the same transaction or occurrence that is the basis of the suit.  § 16.069(a) Tex. Civ. Prac. & Rem. Code Ann.; see also Rotella v. Pederson, 144 F.3d 892, 895 (5th Cir. 1998).  The plain language of this statute saves only counterclaims and cross claims from the statute of limitations.  It does not save claims such as the one instituted here, which is a separate claim in a federal lawsuit, as opposed to a counterclaim in the Texas state suit.  Master glosses over this critical fact, explaining that her retaliation claim

> is *essentially* a counterclaim or cross claim for retaliation.  It has always been Ms. Master's position that MJS' State Law Claims are more appropriately addressed by this Court, as it is the court with the most familiarity with the ongoing litigation, and the court most familiar with enforcement proceedings that were instituted by the government against MJS related to a subpoena issued by OIG for documents relevant to the Master/LHC litigation.  Accordingly, rather than assert retaliation as a counterclaim in Texas, Ms. Master chose to assert retaliation as a separate claim in this Court.

Record Document 112, pp. 13-14 (emphasis added).  While the Court understands the difficulty in simultaneously bringing and defending different claims in different

courts, that does not give this Court carte blanche to assume federal jurisdiction simply for the ease and convenience of the parties.  The Court is bound to construe the Texas savings clause as it is written: as a savior for counterclaims or cross claims only.  Therefore, Master's argument that the Texas savings clause preserves her claim is without merit.

Similarly, the Court finds that Master's alternative argument-- that Louisiana's prescriptive rules save her claim-- likewise fails.  Master's argument on this point is contained in a footnote only, in which Master cites Velazquez v. Landcoast Insulation, Inc., 2008-804 (La. App. 3 Cir. 12/10/08); 999 So. 2d 318, 323, for the proposition that the filing of a qui tam suit interrupts prescription for all other claims arising out of that cause of action.  In Velazquez, the court explained that "[w]hen the filing of a petition places a defendant on notice that legal demands are being made against it because of an occurrence described in the petition, prescription is interrupted, even when the petition fails to state a cause of action." Id.  Bearing that explanation in mind, the Court finds that the statute of limitations was not interrupted in this case.  Indeed, when Master filed her qui tam action in June of 2007, it was only against LHC.  She amended her complaint later that year to assert FCA claims against a number of other home health companies and/or hospitals, but MJS was not included as a defendant.  The record was not unsealed

until September of 2011.  See Record Documents 63 & 64.  It was only in January of 2012 that MJS was named as a defendant.

Under the circumstances of this case, there is no discernible reason why Master's filing of the qui tam suit against LHC and other entities in 2007 would have put MJS on notice that "legal demands are being made against it because of an occurrence described in the petition."  This is simply by virtue of the fact that MJS was not even mentioned as a defendant until 2012, only after it instituted its state law suit against Master.[3]  Master did not cite any additional authority that would support her position, and the Court has not located any, thus leading it to the inevitable conclusion that Louisiana's prescriptive rules do not bar application of the FCA's statute of limitations.

Accordingly, the Court is required to turn to the three year statute of limitations provided by the FCA itself.  In Riddle v. Dyncorp Int'l, Inc., 666 F.3d 940 (5th Cir. 2012), the Fifth Circuit instructed that the Dodd-Frank Act, the 2010 amendment to the FCA, created a three year statute of limitations for FCA retaliation

---

[3] The Court acknowledges that Master's complaint asserts that in September of 2008, the Government served a subpoena on MJS, seeking information concerning the compliance audits performed for LHC.  However, in the absence of any information or arguments to the contrary, the Court does not believe the subpoena put MJS on notice that Master had a retaliation claim against it, nor does Master assert that this event provided MJS with sufficient notice.

actions.[4] Riddle, 666 F.3d at 944.  Because Master's claims against MJS were not filed until approximately four and a half years after the alleged retaliation occurred, the Court concludes that they are barred by the statute of limitations.  Therefore, Master's allegations of pre-termination harassment and retaliation against MJS are dismissed.[5]

      C.     Post-termination retaliation.

MJS next moves to dismiss Master's claims for post-employment retaliation, arguing that § 3730 does not protect against post-employment actions by a former employer.  Master's allegations of retaliation arise out of MJS's filing of the state suit in Texas.  Essentially, Master's amended complaint asserts that by filing claims for breach of contract, violation of trade secrets, breach of fiduciary duties, conversion, conspiracy, tortious interference with a contract, and fraud, MJS retaliated against

---

[4] Prior to that time, courts were directed to apply the state's most analogous statute of limitations.  Although the statute of limitations is now three years, it is not retroactive.  Thus, the Court must apply the statute of limitations in effect at the time the plaintiff filed her complaint.  See Riddle, 666 F.3d at 944.  In this case, instead of looking at when the complaint was filed, the Court looks to the statute of limitations in effect when the complaint was amended to add MJS as a defendant.  In 2012, the three year statute of limitations was already in place.   The parties both agree either expressly or tacitly that the three year statute of limitations is applicable to this case; neither argues that any other time period is or should be applicable.

[5] Because the Court concludes that the statute of limitations bars Master's claims of pre-termination harassment and retaliation against MJS, the Court need not address MJS's alternative argument that Master cannot satisfy the elements of a FCA retaliation cause of action.

her for her participation in the qui tam action against LHC. Master submits that MJS

retaliated against her because it was unwillingly brought into the qui tam action by

having to respond to the Government's subpoena and that its business relationship

with LHC was adversely impacted.

Section 3730(h) provides, in pertinent part:

> Any employee, contractor, or agent shall be entitled to all relief
> necessary to make that employee, contractor, or agent whole, if that
> employee, contractor, or agent is discharged, demoted, suspended,
> threatened, harassed, or in any other manner discriminated against in
> the terms and conditions of employment because of lawful acts done
> by the employee, contractor, agent or associated others in furtherance
> of an action under this section or other efforts to stop 1 or more
> violations of this subchapter.

§3730(h)(1).

In arguing that the FCA does, indeed, provide a remedy for post-employment

acts of retaliation, Master cites Glynn v. Impact Science & Technology, Inc., 807

F.Supp. 2d 391 (D. Md. 2011), arguing that in Glynn, "the court acknowledged a

*potential* claim for post-termination retaliation under the False Claims Act. . . ."

Record Document 112, p. 7 (emphasis added).  However, the *potential* recognition

of a claim plainly does not suffice when the Court is confronted with other federal

court decisions in which it has been held consistently that there is no remedy for

post-employment retaliation.  Although the Fifth Circuit has not decided this

question, the Court is persuaded by the well-reasoned opinion issued in United

States ex rel Head v. Kane Co., 798 F. Supp. 2d 186 (D.D.C. 2011).  There, the court emphasized its focus on the plain language of the statute, which it concluded applies only to the employment context: "[i]n interpreting a statute, 'courts must presume that a legislature says in a statute what it means and means what it says there.'" Head, 798 F. Supp. 2d. at 207 (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146 (1992)).  "In order to defeat this canon of statutory construction, a party must show either that, as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it."  Id. (internal marks omitted).  The Head court concluded that the phrase "in the terms and conditions of employment" necessarily required that the retaliatory actions occur during the period of employment, and therefore could not "extend to claims for retaliatory action occurring solely after a plaintiff has been terminated from his job."  Id. at 208.

It appears that all courts to have addressed this issue have similarly held that § 3730 does not provide a remedy for post-employment retaliation.  See Bechtel v. St. Joseph Med. Ctr., Inc., 2012 WL 1476079 (D. Md. 2012)(dismissing post-termination retaliation claim because such acts are not covered by § 3730(h)); Poffinbarger v. Priority Health, 2011 WL 6180464 (W.D. Mich. 2011) (holding that § 3730 "unambiguously limits retaliation claims to adverse actions taken 'in the

terms of conditions of employment' . . . [and] the retaliatory threats of legal action and affirmative defense raised by Defendants clearly are not actions affecting the terms of conditions of employment.  Furthermore . . . the Court finds that neither legal posturing nor the raising of an affirmative defense in ongoing state litigation initiated by Plaintiff constitute an adverse action"); United States ex rel Davis v. Lockheed Martin Corp., 2010 WL 4607411 (N.D. Tex. 2010) (stating that "§ 3730(h) does not contemplate recovery for postemployment conduct"); Lehoux v. Pratt & Whitney, 2006 WL 346399 (D. Me. 2006) (explaining that "no decisions interpreting the FCA as embracing post-termination conduct" could be located); United States ex rel Wright v. Cleo Wallace Ctrs., 132 F. Supp. 2d 913 (D. Colo. 2000) (dismissing plaintiff's claims for post-employment retaliation by holding that § 3730 does not provide remedies for acts of retaliation subsequent to termination).

Similar to the relator in Head, Master argues that the FCA should be construed as broadly as Title VII, whose retaliation provisions are applicable to post-employment conduct.  However, as the Head court explained, Title VII's retaliation provisions do not contain the same kind of language limiting their scope solely to the employment context.  In addition, Master makes a general public policy argument, not unlike the one posited by the relator in Head. That is, she argues that

limiting the FCA retaliation provision to acts committed during the employment

relationship

> would destroy the FCA's stated purposes of encouraging the detection
> and exposure of potential frauds against the United States Treasury
> and encouraging those with knowledge of fraud to come forward. . . .
> [Any ruling limiting the application of the FCA] would only foster ill-
> conceived lawsuits against qui tam relators by employers, after the
> relator has left his or her employment, under the protection that this
> would not be considered "retaliation" under the law.

Record Document 112, pp. 8-9.   The Court understands Master's point and

sympathizes with her position.   However, as stated so well by the <u>Head</u> court, "the

court's role is not to 'correct' the text so that it better serves the statute's purposes,

for it is the function of the political branches not only to define the goals but also to

choose the means for reaching them." <u>Head</u>, 798 F. Supp. 2d at 208 (internal marks

omitted).

   In sum, Master's reliance on a single case, <u>Glynn</u>, which acknowledged,

without deciding, that a "potential" claim for post-employment retaliation exists, is

woefully insufficient to outweigh the well-reasoned analysis of <u>Head</u> and the other

federal jurisprudence cited above.[6]   This court will follow its sister district courts and

---

   [6] The Court also notes that <u>Glynn</u> was decided by the District of Maryland in
August of 2011.   In 2012, in <u>Bechtel</u>, another court in the District of Maryland firmly
rejected the theory that the FCA provides remedies for post-employment retaliation.
Evidently, <u>Glynn</u>'s recognition of a potential post-employment retaliation claim is not
persuasive authority to its sister courts in the District of Maryland.

hold that the FCA does not provide a remedy for post-employment retaliation. Accordingly, Master's allegations of post-employment retaliation are dismissed.

     D.  Declaratory Judgment.

     Although Master repeatedly contends that MJS's motions to dismiss do not seek dismissal of her declaratory judgment action, MJS correctly points out that once the Court is devoid of federal jurisdiction, the declaratory judgment action must likewise be dismissed.  The Fifth Circuit has explained that "[t]he Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present." Johnson v. United States, 2012 WL 6605770, * 6 (5th Cir. 2012) (citing Jones v. Alexander, 609 F.2d 778, 781 (5th Cir. 1980)); see also Wolcott v. Sebelius, 635 F.3d 757, 767 (5th Cir. 2011).  Thus, the burden is on Master to demonstrate that there is another basis for subject matter jurisdiction, which she has failed to do.  Accordingly, the Court concludes that there is no independent subject matter jurisdiction which would allow it to retain the declaratory judgment action; thus, it, too, must be dismissed.

## CONCLUSION

     For the foregoing reasons,

     **IT IS ORDERED** that MJS's motions to dismiss [Record Documents 103 & 104] be and are hereby **GRANTED**.

**IT IS FURTHER ORDERED** that MJS's amended and supplemental motions to dismiss, or alternatively, motions for summary judgment [Record Documents 124 &127] be and are hereby **DENIED**.

**IT IS FURTHER ORDERED** that MJS's pending motions, Record Documents 97, 138, and 142, be and are hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDRED** that the claims of Judy Master against Defendant MJS shall be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** on this 1st day of March, 2013.


ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

20 of 20